UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 19 CR 190-1 |
| v. ) | |
| ) | Hon. Robert W. Gettleman |
| DERRICK MUHAMMAD ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully submits the Government's Sentencing Memorandum, and asks this Court to sentence the defendant to no less than 18 months' imprisonment.

**I. Background**[1]

In March 2018, defendant Derrick Muhammad, who was then a supervisory officer with the City of Harvey Police Department, orchestrated a police cover-up to protect his friend, Individual A, and Individual A's son—both convicted felons—from a criminal investigation concerning their illegal possession of a loaded Uzi firearm that had previously been reported as stolen. The cover-up began when Individual C, the owner of a tow yard in Harvey and Muhammad and Individual A's associate, called Muhammad to alert him that he (Individual C) had found a loaded Uzi firearm in a car used by Individual A and Individual A's son that the Harvey police had

---

[1] The facts contained in this section are taken from the criminal complaint (R. 1) and defendant's plea agreement (R. 83).

recently towed to Individual C's lot. Muhammad agreed that he and Individual C would "keep it [the recovery of the firearm in Individual A's car] between us," and explained to Individual C, "We gonna put it down as recovered property and we, we, we gonna handle it. We know how to do it." By that, Muhammad meant that he was going to generate, or cause to be generated, a false police report to make it appear as though the police had recovered the firearm but had no information regarding to whom it belonged, thereby preventing a felony criminal investigation into Individual A and his son.

Muhammad recruited a lower-ranking police officer, Derrick Moore—who had no connection to Individual A or his son, but who was involved in towing the vehicle to Individual C's lot (and who missed the fact that there was a loaded Uzi firearm inside the towed vehicle)—to recover the firearm from Individual C and generate the false police report. On March 18, 2018, Muhammad called Moore and stated, "What time you wanna do this? . . . Cause we gonna, we gonna put like, uh, 'recovered.' That's all we gonna do . . . We ain't gonna make it no, no criminal investigation . . . Right, you and me gonna head over there [Individual C's lot] and, and make a way it ain't come back on nobody."

Moore agreed to Muhammad's plan. The following day, Moore recovered the firearm from Individual C (Muhammad did not ultimately accompany Moore to Individual C's lot to retrieve the firearm). Moore then generated a false police report stating that he had recovered the loaded Uzi firearm "in the brush" in the area of

2

Individual C's lot. The report made no mention of Individual A, Individual A's son, or the vehicle where the firearm had been actually recovered.

Days later, Muhammad spoke to Moore to confirm that Moore had carried out Muhammad's instructions to file the false report. Moore confirmed that he had.

## II. The Government's Position on Sentencing

The district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the guidelines range. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007). The sentence imposed must be "sufficient, but not greater than necessary," to comply with the purposes of sentencing provided under 18 U.S.C. § 3553(a)(2).

### A. The PSR

The government has no objections to the PSR. The Probation Officer's guidelines calculation matches the parties' agreed guidelines calculation contained in the plea agreement. Muhammad is a total offense level of 15 and a criminal history category of I, leading to an advisory range of 18-24 months' imprisonment.

### B. The 3553(a) Factors

The highest responsibility of any police officer is to protect the public. Muhammad directly endangered the public and flagrantly violated its trust by seeking to cover up potentially serious felony firearms offenses. Under any circumstances, that is outrageous conduct. In a community like Harvey, which suffers from significant gun violence, it is unforgivable.

Case: 1:19-cr-00190 Document #: 96 Filed: 10/30/20 Page 4 of 7 PageID #:337

Of course, the harm Muhammad caused goes much farther than obstructing a single criminal investigation. Whenever police officers act corruptly, it significantly impairs the public's faith in government and the rule of law itself. When citizens no longer trust the system, democracy breaks down. In sentencing the defendant, the Court should be mindful of the broader institutional ramifications of his conduct, and the need to restore the public's faith in the justice system.

The Court must also seek to deter other public officials who may be tempted to use their public powers to seek corrupt, private gains. While the vast majority of police officers serve honestly and courageously, there remain officers who fail to uphold their oaths and dishonor their badges. Unfortunately, public corruption generally is an unusually prevalent and persistent problem in Chicago and its surrounding communities. Until recently, that was perhaps nowhere as true as in Harvey. Muhammad is one of at least six family members and/or close associates of former Harvey Mayor Eric Kellogg (who served from 2003 to 2019, and who has not been charged in this ongoing investigation) to be indicted for using their positions within, and/or direct ties to, the Kellogg administration as a means to serve corrupt, criminal ends.

The people of Harvey—a proud but struggling community that is in particular need of good, clean government—deserve much better. This Court can promote better future governance in Harvey and surrounding areas by making an example of those leaders who have failed their communities in the past. Indeed, given the substantial media coverage this case has received, this sentencing presents a rare opportunity to

promote general deterrence in the context of police corruption; the Court must seize it.[2]

As a supervisory police officer, Muhammad also owed a heightened duty of trust and responsibility to lower-ranking officers. While Moore is to blame for his own decisions, the fact that Muhammad recruited and directed a lower-ranking officer to carry out the cover-up in his place is severely aggravating. Muhammad cynically exploited a power imbalance to shield himself from his own corrupt scheme, while needlessly jeopardizing the career of another officer.

On the mitigating side of the ledger, Muhammad is 72 years old and has no prior criminal convictions. To the extent the Court may be reluctant to incarcerate a 72-year old, it is worth noting that Muhammad is active and in good health, and does not suffer from any medical problems that would make a term of incarceration unusually difficult for him. PSR, ¶¶ 59-60. Muhammad also served approximately two years in the United States Army in the late 1950s, and received an honorable discharge.

The Court must avoid unwarranted sentencing disparities. The government has requested a one-year term of probation for co-defendant Moore, and at least 18 months' of incarceration for Muhammad. The disparity in the government's sentencing recommendations is warranted because Muhammad and Moore are not similarly situated. Muhammad was a high-level officer who planned the cover-up

---

[2] *See, e.g.* Koeske, Zak. "Former Harvey Mayor's Brother Pleads Guilty to Participating in Police Cover-Up." *Chicago Tribune*, 13 Aug. 2020, available at: https://www.chicagotribune.com/suburbs/daily-southtown/ct-sta-harvey-corruption-guilty-plea-st-0814-20200813-uyhamwvawve3dj4hbskofdw5wu-story.html.

from start to finish, and then played a supervisory role in its execution. Moore was a low-level officer who had no planning role and did not supervise or recruit anyone into the scheme. Muhammad planned the cover-up to benefit his close friend, Individual A; Moore did not benefit in any way from the cover-up, nor did anyone close to Moore. Moore provided substantial assistance to the government; Muhammad refused to cooperate.

The government has factored in Muhammad's age, lack of criminal history, and prior military service in recommending a sentence at the low-end of the guideline range. The government respectfully urges the Court not to go lower than 18 months, as anything less would not adequately reflect the seriousness of the offense—particularly the grave, systemic harm associated with the erosion of public faith in law enforcement—and the unusually compelling need to deter other would be offenders.

C. Fine

Muhammad has substantial financial assets, which includes over $4,500 in monthly income from two public pensions alone (and a total monthly cash flow of just under $9,000). PSR, ¶ 78. The public should not bear any further expenses associated with this defendant—at the very least, the Court should require Muhammad to pay a fine that covers any costs to the government associated with his sentence (incarceration and supervised release). *See* 18 U.S.C. § 3572(a)(6); PSR, ¶ 94. The Court should also consider an additional fine, particularly if it determines that a within-guideline sentence of imprisonment is greater than necessary.

6

### III. Conclusion

For the reasons set out above, the government respectfully asks this Court to impose a sentence of 18 months' imprisonment, a term of supervised release of at least 2 years, and a fine that covers, at the very least, all expected costs to the government associated with Muhammad's sentence (approximately $65,116 if the Court were to impose the government's recommended sentence, *see* PSR,¶ 94). The government recommends the term of supervised release include all mandatory, discretionary, and special terms included in the PSR (except for the excessive use of alcohol restriction, which does not appear to be supported by the 3553(a) factors).

Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Sean J.B. Franzblau*
Sean J.B. Franzblau
Assistant United States Attorney